IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


GEORGE ANTHONY WEST,                              CV 07-1440-MA

                Petitioner,                   OPINION AND ORDER

        v.

J.E. THOMAS,
Warden, FCI-Sheridan,

                Respondent.


        GEORGE ANTHONY WEST
        Federal Public Defender's Office
        101 SW Main Street, Suite 1700
        Portland, OR  97204

            Attorney for Petitioner

        KARIN J. IMMERGUT
        United States Attorney
        SUZANNE A. BRATIS
        Assistant United States Attorney
        United States Attorney's Office
        District of Oregon
        1000 SW Third Avenue, Suite 600
        Portland, OR  97204-2902

            Attorneys for Respondent

MARSH, Judge:


1- OPINION AND ORDER

Petitioner, an inmate in the custody of the Federal Bureau of Prisons (BOP), currently housed at the Federal Correctional Institution (FCI) in Sheridan, Oregon, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2241.

## BACKGROUND

On February 24, 2006, in the Eastern District of Washington, Petitioner pleaded guilty to Distribution of a Controlled Substance (a mixture of substances containing a detectable amount of cocaine base) in violation of 18 U.S.C. § 841(a)(1). He was sentenced to 60 months imprisonment, 6 years of supervised release, and ordered to pay restitution in the amount of $1100.

On September 26, 2007 Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (#1), and a Motion for Appointment of Counsel (#2).

On October 15, 2007 I signed a Habeas Corpus Scheduling Order Serving Petition for Writ of Habeas Corpus 2241 (#5), directing the Clerk to serve a copy of the order and the petition on the United States Attorney for the District of Oregon, and ordering Respondent to show cause within 20 days "from receipt of this order...why the relief prayed for should not be granted."

On October 22, 2007 Petitioner filed an Emergency Motion for Protective Order (#6) in which he asserted that on October 4, 2007 BOP personnel informed him they "had calculated a new and substantially increased payment schedule" for his restitution

2- OPINION AND ORDER

payment, and "insisted, under the threat of IFRP refusal status that Petitioner sign a new IFRP compliance contract reflecting the new payment schedule."  Petitioner reportedly refused to sign the contract, and was placed on "IFRP refusal status."

On December 17, 2007 Petitioner filed a Motion for Final Judgment for Failure to Defend (#7), reasserting his request for habeas relief and arguing that the time for Respondent to file an answer had passed.

On December 26, 2007 the Acceptance and Acknowledgment of Service of the Petition for Writ of Habeas Corpus and Scheduling Order upon the U.S. Attorney (#9) was signed by Assistant United States Attorney Scott Asphaug.  The docket entry reflecting the Acceptance and Acknowledgment of Service states "Answer to the Habeas Petition is due by 1/17/08."  Although January 17, 2008 was 22 days from United States Attorney's receipt of the scheduling order and petition, a federal holiday (New Years) fell within this time period.  The Clerk customarily adds a day or more when computing time limits that traverse federal holidays.

On January 17, 2008 Respondent filed a Motion to Dismiss Petitioner's Writ of Habeas Corpus Filed Under 28 U.S.C. § 2241, In the Alternative, Respondent's Answer (#10).

On February 6, 2008 Petitioner filed a Motion to Strike Respondent's Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus Filed Under 28 U.S.C. § 2255 [*sic*], In the

Alternative, Petitioner's Reply (#11).  Petitioner again asserted that Respondent's answer was untimely, arguing that "Respondent missed the scheduling deadline by more than seventy-days."  This motion remains pending.

On March 19, 2008 I granted Petitioner's Motion for Appointment of Counsel, and ordered Petitioner to Respond to the Government's Motion to Dismiss Petitioner's Writ of Habeas Corpus by April 4, 2008.  (#14).  I also set oral argument for April 22, 2008.

On March 27, 2008 Petitioner filed a Motion for Extension of Time (#16) to submit his counseled Response to the Government's Motion to Dismiss (#10).  I granted this motion, and reset oral argument to May 13, 2008 (#17).  On April 25, 2008, Petitioner filed his Response to the Motion to Dismiss Petitioner's Writ of Habeas Corpus (#18).

On May 1, 2008 Respondent filed an Unopposed Motion for Extension of Time to file a Reply (#19), until after oral argument.  Soon thereafter the parties informed me they may have reached an out-of-court resolution, and requested that I strike oral argument.  On May 7, 2008 I ordered oral argument stricken from the calendar, and set a status conference on this case for May 15, 2008 (#22).

On May 14, 2008, the day before the status conference, Petitioner filed an Amended Response to Motion to Dismiss

Petitioner's Writ of Habeas Corpus (#24).  At the status
conference the parties informed me that an out-of-court
resolution had not been reached in this case.  Therefore, I
ordered Respondent to reply to Petitioner's Amended Response
(#24) by June 5, 2008.  On June 5, 2008, Respondent filed a Reply
to Petitioner's Amended Response (#25).

<b><u>STANDARDS</u></b>

Under the Inmate Financial Responsibility Program (IFRP),
codified at 28 C.F.R. § 545.10, *et seq.*, the BOP encourages
sentenced inmates to voluntarily fulfill their legitimate
financial obligations by offering incentives to inmates who
comply with the provisions of their financial plan.  *See* 28
C.F.R. § 545.10.  BOP staff develop a financial plan for each
inmate, based on the inmate's ability to pay.  The consequences
to an inmate who refuses to comply with the provisions of his
financial plan are as follows:

> (1) Where applicable, the Parole Commission will be notified
> of an inmate's failure to participate;
>
> (2) The inmate will not receive any furlough (other than
> possibly an emergency or medical furlough);
>
> (3) The inmate will not receive performance pay above the
> maintenance pay level, or bonus pay, or vacation pay;
>
> (4) The inmate will not be assigned to any work detail
> outside the secure perimeter of the facility;
>
> (5) The inmate will not be placed in UNICOR.  Any inmate
> assigned to UNICOR who fails to make adequate progress on
> his/her financial plan will be removed from UNICOR, and once
> removed, may not be placed on a UNICOR waiting list for six

5- OPINION AND ORDER

months.  Any exception to this requires approval from the
Warden;

(6) The inmate shall be subject to a monthly commissary
spending limitation more stringent than those for all
inmates.  This more stringent commissary spending limitation
for IFRP refuse status inmates shall be at least $25 per
month, excluding purchases of stamps, telephone credits,
and, if the inmate is a common fare participant,
Kosher/Halal certified shelf-stable entrees to the extent
that such purchases are allowable under pertinent Bureau
regulations;

(7) The inmate will be quartered in the lowest housing
status (dormitory, double bunking, etc.);

(8) The inmate will not be placed in a community-based
program;

(9) The inmate will not receive a release gratuity unless
approved by the Warden;

                              ***

(11) The inmate will not receive an incentive for
participation in residential drug treatment programs; and

(12) The inmate's score on "Responsibility" on the Custody
Classification form (BP-338) is to be zero.

28 C.F.R. § 545.11(d).

Inmates do not have a constitutional right to the benefits
afforded IFRP participants and denied inmates placed on IFRP
"refusal status"  *See e.g. Harris v. Sivley*, 1991 WL 268943, *1
(9th Cir. 1991)(no liberty interest in UNICOR job assignments);
*Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 846 (9th
Cir. 1985)(no constitutional right to jobs and educational
opportunities); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir.
1985)(no liberty or property interest in vocational training);

*Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (no constitutional right to rehabilitation). Accordingly, several circuits have upheld the IFRP program against constitutional due process challenges. *See generally Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001); *United States v. Gomez*, 24 F.3d 924, 927 (7th Cir. 1994); *United States v. Williams*, 996 F.2d 231, 234 (10th Cir. 1993); *Dorman v. Thornburgh*, 955 F.2d 57, 58-59 (D.C. Cir. 1992); *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2nd Cir. 1990); *James v. Quinlan*, 866 F.2d 627, 629 (3rd Cir. 1989).

The Ninth Circuit implicitly endorsed the IFRP in *United States v. Haggard*, 41 F.3d 1320, 1329 (9th Cir. 1994)(holding that the district court did not err by imposing a fine based on an inmate's ability to pay through the IFRP), and *Montano-Figueroa v. Crabtree*, 162 F.3d 548 (9th Cir. 1998)(finding no constitutional violation where inmate required to make payments toward fine in order to continue prison employment through the IFRP).

In *U.S. v. Gunning*, 401 F.3d 1145, 1150 (9th Cir. 2005)(*Gunning II*), the Ninth Circuit again endorsed the BOP's management of inmate financial obligations through the IFRP, but clarified that the BOP does not have authority to set a schedule for payment of restitution:

> We do not doubt that the BOP, like the probation office, has
> expertise in the payment area. That has wisely induced it

to create the IFRP procedure whereby the BOP will "help [the] inmate develop a financial plan" and will then "monitor the inmate's progress" in meeting the terms of that plan. 28 C.F.R. § 545.11; *see also* 28 C.F.R. § 545.10. Not surprisingly, restitution is one of the obligations with which the BOP concerns itself, and it is, indeed, a top priority. *See* 28 C.F.R. § 545.11(a)(2). But there is no set schedule [for payment of Gunning's restitution during incarceration], and the district court simply does not have the authority to delegate its own scheduling duties- not to the probation office, not to the BOP, not to anyone else.

Since *Gunning II* this Court has repeatedly issued writs of habeas corpus ordering the BOP to cease collection of restitution payments from inmates whose sentencing orders do not set a schedule for payment of restitution during imprisonment, ordering the BOP to designate these inmates "IFRP exempt". *See Maciejewski v. Daniels*, 2008 WL 6489689 (D. Or. March 7, 2008); *Aklestad v. Daniels*, 2008 WL 199909 (D. Or. Jan 17, 2008); *Darland v. Daniels*, 2007 WL 4563667 (D. Or. Dec. 20, 2007); *Purteman v. Daniels*, 2007 WL 4563641 (D. Or. Dec. 20, 2007); *White v. Daniels*, 2007 WL 4210960 (D. Or. Nov. 26, 2007); *Haskins v. Daniels*, 2007 WL 4210913 (D. Or. Nov. 26, 2007); *Nelson v. Daniels,* 2007 WL 3128502 (D. Or. Oct. 22, 2007); *Wright v. Daniels,* 2007 WL 3125302 (D. Or. Oct. 22, 2007); *Putnam v. Daniels*, 2007 WL 2688243 (D. Or. Sept. 10, 2007); *Bowen v. Daniels,* 2007 WL 2608312 (D. Or. Sep. 3, 2007); *Fowler v. Daniels*, 2007 WL 2323306 (D. Or. Aug. 8, 2007); *Lemoine v. Daniels*, 2007 WL 2138601 (D. Or. July 20, 2007); *Dixey v. Daniels*, 2007 WL 1975806 (D. Or. July 5, 2007); *Jones v. Daniels*,

2007 WL 1959278 (D. Or. July 2, 2007); *Calvert v. Daniels*, 2007
WL 201067 (D. Or. Jan. 16, 2007); *Soroka v. Daniels*, 467 F. Supp.
2d 1097 (D. Or. Dec. 5, 2006).

This district has taken two positions inconsistent with the
above line of cases. In *Tyler v. Daniels*, 2007 WL 4165746 (D.
Or. Nov. 17, 2007), the Honorable Ann Aiken adopted the Findings
and Recommendation of Magistrate Judge Coffin to deny the writ on
mootness grounds based on Respondent's concession that he would
cease collecting restitution payments and identify the petitioner
"IFRP exempt." In *Murphey v. Daniels*, 2008 WL 442297 (D. Or.
Feb. 13, 2008), the Honorable Michael R. Hogan adopted the
Findings and Recommendation of Magistrate Judge Coffin to deny
the writ on the same basis. Notably, Respondent issued the same
concession in almost every one of the above cases in which the
Court granted the writ, but did not cease collection of
restitution payments from these petitioners prior to the issuance
of the writ. In this case Respondent assumes a materially
different position, now contending that the cases in which he
conceded the BOP's collection of restitution payments was illegal
were wrongly decided and that the Court should abandon this
precedent.

**DISCUSSION**

9- OPINION AND ORDER

According to Petitioner, when he arrived at FCI Sheridan the BOP began withdrawing quarterly payments of $25 from his prison bank account, pursuant to the IFRP. *See* 28 C.F.R. § 545.10, *et seq.* Although Petitioner initially signed a contract "agreeing" to pay this amount, he claims he did so "under threat of IFRP 'Refusal Status,' and over [his] objection...". In his Emergency Motion for Protective Order (#6) Petitioner avers that on October 4, 2007 the BOP again insisted that Petitioner sign a contract promising to pay an unspecified new amount toward his restitution sentence. Petitioner reportedly refused to do so and was placed on IFRP "refusal status" at that time.

Petitioner requests this Court issue a Writ of Habeas Corpus commanding Respondent to cease collecting any restitution payments from him on the basis that the BOP does not have authority to require him to pay his restitution because the sentencing court did not fix a restitution payment schedule for his period of imprisonment. Respondent moves to dismiss the petition as improperly brought pursuant to 28 U.S.C. § 2241, because Respondent contends Petitioner is attempting to directly challenge his underlying sentence, not simply the execution of that sentence.

According to Respondent, if this Court were to reach the merits and find that the sentencing order fails to set a restitution payment schedule for the period of imprisonment,

10- OPINION AND ORDER

implicitly the Court would be finding that the sentencing order contains "conflicting mandates," as it is not possible for Petitioner to participate in the IFRP, as the sentencing order commands, and not pay restitution.  In that case, according to Respondent, Petitioner necessarily seeks to challenge the legality of his sentence because his claim "is rooted in that ambiguity."

Even if Petitioner had not repeatedly stated in his Petition and supporting memoranda that he does not seek to challenge his underlying conviction or sentence, I would find Respondent's argument completely without merit.  While Respondent is correct that "IFRP is a payment program, therefore in order to participate some payment schedule is necessary," Respondent is not correct that payment of restitution is necessary.

The Policy Statement attached as Exhibit 3 to Respondent's Reply (#25) clearly states that the IFRP is designed to help inmates meet their legitimate financial obligations, such as (1) special assessments; (2) court-ordered restitution; (3) fines and court costs; (4) state or local court obligations; and, (5) other federal government obligations, such as judgments against the inmate, taxes and student loans.  *See also* 28 C.F.R. § 545.11(a) (outlining the financial obligations the plan should take into account).  Restitution being only one of many legitimate financial obligations an inmate's IFRP financial plan may take

11- OPINION AND ORDER

into account, a sentencing order may validly order a defendant to participate in the IFRP even if it does not impose a restitution sentence.  Thus, a finding that Petitioner's sentencing order does not set a schedule for payment of restitution during the period of imprisonment does not, *ipso facto*, render unclear the order that he participate in the IFRP.  In any event, Respondent himself insists that the IFRP is a voluntary program and Petitioner could choose not to participate.  If Respondent is correct, the language in the sentencing order stating "Petitioner shall participate in the BOP Inmate Financial Responsibility Program" is simply surplusage, not a "conflicting mandate."

Finally, I want to be very clear that Respondent's speculation that the sentencing court was aware of Ninth Circuit law is irrelevant, as is his suggestion that there is a more "appropriate vehicle through which to clarify the sentencing court's judgment."  Our concern is not whether the court was aware of the law, but whether it followed the law.  A sentencing court also cannot clarify its judgment, or amend the judgment to set a schedule for payment of restitution, in the absence of a material change in the prisoner's economic circumstances that could affect his ability to pay restitution.  *U.S. v. Soroka*, 508 F. Supp. 2d 869 (D. Or., Aug. 30, 2007).

For all of these reasons, Respondent's Motion to Dismiss (#10) the petition is denied.

12- OPINION AND ORDER

I turn now to the merits of Petitioner's claim that his sentencing order does not set a restitution payment schedule for the period of imprisonment.  The sentencing order contains a "Schedule of Payments" page on which the sentencing judge checked the box next to the line "Payment to begin immediately."  The sentencing judge also checked the box listing "Special instructions regarding the payment of criminal monetary penalties," below which two instructions are listed:

> Defendant shall participate in the BOP Inmate Financial Responsibility Program.

> Defendant shall make monthly payments of not less than $10.00 or an amount as determined by defendant's supervising probation officer.

Lastly, this page contains a boilerplate paragraph stating that if the judgment imposes imprisonment and does not expressly order otherwise, "payment of criminal monetary penalties is due during imprisonment."

According to Petitioner, although the sentencing order does state that he must participate in the IFRP, and that criminal monetary penalties are due during imprisonment unless otherwise stated, still, the order does not set a schedule for payment of restitution during imprisonment.  Petitioner argues that the "special instruction" about monthly payments of not less than $10 relates to his period of supervised release, not imprisonment, "as signaled by its reference to his supervising probation officer."  Respondent does not traverse this argument, except to

13- OPINION AND ORDER

state that it "is one plausible reading of the judgment." (#25 at 4).

Respondent urges the court not to focus on the language of the sentencing order, but instead to find that Petitioner "voluntarily" agreed to make the $25 quarterly payment in exchange for the privileges the IFRP program bestows on inmates who do the same. Even if the sentencing court's mandate that Petitioner participate in the IFRP is unenforceable, according to Respondent, "Petitioner remains free to participate voluntarily in IFRP."

In support of this position Respondent refers me to my opinion in *Dixey v. Daniels*, 2007 WL 1975806, *3 (D. Or.), for the proposition that an inmate can choose to pay more than the amount ordered by the court's judgment. In *Dixey* I found that the "not less than" language in the sentencing order meant that the petitioner could choose to pay more than the amount stated in the sentencing order (i.e. "not less than $25 per quarter"), but that the BOP did not have the authority to reassess the petitioner's ability to pay and increase his restitution payment amount. Moreover, I credited *Dixey's* averment that although he "agreed" to pay more than $25 per quarter he did so "in order to avoid the adverse consequences of not agreeing." *Id*. at 3. In other words, I did not impose a heightened pleading requirement on the question of voluntariness as Respondent would have me do.

14- OPINION AND ORDER

Similarly, the petitioner in *United States v. Young,* 533 F.
Supp. 2d 1086 (D. Nev., Dec. 11, 2007), the case Respondent urges
me to substitute for this district's precedent, asserted that he
"agreed" to pay restitution during imprisonment, but that he was
acting under duress.  The district court in Nevada required the
petitioner to produce "facts or evidence" to support his claim
that his "agreement" to pay restitution during imprisonment was
the result of duress.  The court rejected the petitioner's
contention, finding that the only duress involved was that if the
petitioner did not agree to pay restitution during imprisonment
"he would not be permitted to receive or participate in benefits
to which he has no entitlement in the first instance."

Except for citing *Young*, and arguing that prisoners do not
have constitutional rights to the benefits bestowed upon IFRP-
compliant prisoners, Respondent has not addressed my presumption,
which I announced at the status conference, that prisoners
voluntarily participating in the IFRP would not seek habeas
relief asking to be exempted from participating.  Although a
petitioner may not have a constitutional right to the benefits
bestowed on inmates who comply with the financial plan the BOP
sets for them under the IFRP, the BOP does not have authority to
essentially punish a prisoner by withholding these benefits if he
is not legally obligated to pay restitution.  So if a prisoner
not legally obligated to pay restitution during imprisonment does

15- OPINION AND ORDER

pay from time to time the BOP does not have authority to designate him IRFP non-compliant during times he does not pay, for this reason alone.

Thus, I find a presumption of involuntariness should attach to any petition for writ of habeas corpus in which a petitioner who is not required by law to pay restitution during imprisonment asserts that, indeed, the restitution payments he has made were made involuntarily. Accordingly, I accept Petitioner's unrebutted testimony that any restitution payments he has made were not voluntary, and that he does not wish to make future voluntary payments.

Respondent's concern that this finding will essentially prohibit prisoners from paying down their restitution debt voluntarily is unfounded. Respondent agues that the Mandatory Victim's Restitution Act "vests in the sentencing court the authority to order a schedule of restitution payments," but it does not "prohibit an inmate from voluntarily paying down his financial obligations at a faster rate." These statements are inaccurate, at best. The Mandatory Victim's Restitution Act does not simply give the sentencing court authority to order a restitution payment schedule if it chooses to do so. The MVRA mandates that the court "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid...". *See* 18 U.S.C. § 3664(f)(2). The

16- OPINION AND ORDER

Ninth Circuit in *Gunning II* held that when the sentencing court fails to meet this obligation nobody else can fix this omission. 401 F.3d at 1150.  But even in this event, a prisoner may voluntarily pay down his restitution debt if he chooses. However, the BOP cannot set a schedule by which the prisoner will make voluntary payments because the moment this happens it has crossed over the line brightly drawn by *Gunning II*, by *de facto* assuming the court's non-deligable duty to set a payment schedule.  To avoid this problem the BOP must simply stop asking prisoners to sign "voluntary" contracts to make sum certain restitution payments.

Finally, the validity of the IFRP and its independence from the judiciary, issues Respondent takes great pain to emphasize, are simply not relevant to the question presented here.  The question before me is, "Did the sentencing court properly execute its duty under the MVRA to specify the schedule according to which the $1100 restitution sentence was to be paid during this petitioner's period of imprisonment?"  The answer to that question is no.  Accordingly, the BOP did not have authority to collect restitution payments from Petitioner, or to sanction him for not making restitution payments by withholding the benefits of otherwise satisfactory participation in the IFRP.

**CONCLUSION**

17- OPINION AND ORDER

Based on the foregoing, Respondent's Motion to Dismiss (#10) is DENIED, Petitioner's habeas corpus petition (#1) is GRANTED, and the BOP is ordered to designate Petitioner "IFRP Exempt." All other outstanding motions are denied as moot.

IT IS SO ORDERED.

DATED this _2_ day of July, 2008.

            /s/  Malcolm F. Marsh
            Malcolm F. Marsh
            United States District Judge